IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA NOBLE o/b/o J.P.L., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   22-cv-3408 |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                August 11, 2023

  Plaintiff Laura Noble filed this action on behalf of her minor child J.P.L. pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review is **GRANTED**, and the matter is remanded for further proceedings consistent with this opinion.

I.  PROCEDURAL HISTORY

  Plaintiff protectively filed an application for SSI on J.P.L.'s behalf on December 21, 2012, alleging disability beginning on January 1, 2006. (R. 156-64). Plaintiff's application was denied on the initial level on February 7, 2013, and she requested a hearing before an Administrative Law Judge (ALJ). (R. 76-83, 89-91). The hearing occurred on November 21, 2014. (R. 38-69). Plaintiff, represented by counsel, appeared and testified at the hearing, as did J.P.L. (*Id.*). On January 29, 2015, the ALJ issued a decision denying benefits under the Act. (R.

18-37). Plaintiff requested review of the decision, and the Appeals Council denied her request on October 2, 2016. (R. 1-6, 14).

Plaintiff filed a Complaint in this Court on August 23, 2016. (No. 16-cv-45431, Compl., ECF No. 3). In a report and recommendation entered on December 1, 2020, the Honorable Henry S. Perkin recommended that Plaintiff's Brief and Statement of Issues in Support of Request for Review should be denied and that the ALJ's decision should be affirmed. (*Id.*, Report and Recommendation, ECF No. 20). On December 17, 2020, the Honorable Paul S. Diamond granted the Commissioner's unopposed motion to remand under the fourth sentence of 42 U.S.C. § 405(g). (*Id.*, Mot. to Remand, ECF No. 21; R. 892-93).

On March 21, 2020, the Appeals Council vacated the Commissioner's final decision and remanded this case to a different ALJ pursuant to the ruling in *Cirko v. Commissioner of Social Security*, 948 F.3d 148 (3d Cir. 2020). (R. 894-98). Plaintiff amended the alleged disability onset date to December 13, 2012 and requested a closed period of disability from December 13, 2012 to August 31, 2016. (R. 991). A hearing was conducted on July 7, 2021, and Plaintiff and J.P.L. both testified. (R. 870-91). The ALJ issued a decision denying benefits on August 20, 2021. (R. 843-63). Plaintiff requested review of the decision, and the Appeals Council denied his request on October 2, 2016, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 836-42).

Plaintiff filed a Complaint in this Court on August 25, 2022. (Compl., ECF No. 1). On September 2, 2022, Plaintiff consented to my jurisdiction in this matter. (Consent, ECF No. 4). On December 5, 2022, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 6). On December 5, 2022, the Commissioner filed a response (Def.'s Br., ECF No. 7), and, on January 18, 2023, Plaintiff filed a reply brief (Pl.'s Reply Br.,

2

ECF No. 8).

## II.     FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.  J.P.L. was born on November 20, 2004, making him eight years old on the date the application was filed.  (R. 847).

### A.     School Records

J.P.L. has severe asthma and allergies to milk, eggs, wheat, soy, fish, shellfish, nuts, tree nuts, beef, pork, peas, cats, dogs, any furry animal, dust, mold, and amoxicillin.  (R. 1351-73).  Beginning on May 17, 2012, when the child was seven years old and in the first grade at a public school in Chester County, the school district has adopted several Section 504 plans describing the adaptations, services, or related aids provided because of his health conditions.  (R. 171-77, R. 222-23, 1351-73).  The initial plan included the following steps: all faculty, staff, and helpers should be aware of the signs of both an allergic reaction and asthma attack; the nursing staff was to administer prescription medications (inhaler, nebulizer, and Epi-Pen); the child should use tape instead of glue sticks; J.P.L. should sit at a milk free and peanut free table at lunch; the child should eat only the snack provided by Plaintiff; Plaintiff would either decide on her son's participation in school field trips or attend field trips with him; Plaintiff would consult with the art teacher concerning art supply ingredients and possible replacement activities; and Plaintiff would research the availability of latex free gloves for use as needed.  (R. 176).  Plaintiff and the school district subsequently added more steps, including: J.P.L. should not take any oral medications other than what the parent had provided to the school; he should wear Latex free gloves when participating in any science experiments or any other class projects in which he

could be exposed to allergens; J.P.L. and his teacher would develop a non-verbal cue (i.e., a card to put on the teacher's desk) to alert the teacher if he needed to go to the nurse's office to get his breathing under control; the child would be escorted to the nurse's office unless there was a major reaction or attack, in which case the nurse would be called to the classroom; J.P.L. would go to the nurse's office before gym class to receive two puffs from his inhaler; he would go to the nurse's office after gym class, before recess, and after recess to be evaluated for possible treatment; and Plaintiff must receive a phone call for any other visit to the nurse's office. (*See, e.g.*, R. 222-23). As of May 22, 2015, or, at the latest, August 31, 2015, when J.P.L. began the fifth grade, the child was permitted to have a friend sit with him at the restricted lunch table. (R. 1366-67). Effective August 29, 2016, J.P.L. was given "the option" of sitting at a restricted table. (R. 1361).

On January 31, 2013, J.P.L.'s second grade teacher completed a questionnaire, stating that the child had no problems with acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for himself. (R. 201-05). As to the child's health and physical well-being, she observed that he had food allergies and asthma and that his asthma caused him to miss school frequently. (R. 206).

J.P.L.'s third grade teacher and the school nurse filled out a teacher questionnaire on May 15, 2014. (R. 214-221). According to the questionnaire, the child had no limitations in the domains of acquiring and using information and moving and manipulating objects, and slight problems with interacting and relating to others and attending and completing tasks. (R. 215-17). In the domain of caring for himself, J.P.L. had an obvious problem cooperating in, or being responsible for taking needed medications. (R. 219). Additionally, J.P.L. sometimes had to be reminded to go to the nurse before gym or recess for his checkup. (*Id.*). The teacher and the

nurse indicated that his asthma did not interfere with his ability to function in a school setting, that he was absent from school twenty-four times due to his conditions, and that the nurse had not needed to send him home during the 2013-2014 school year.  (R. 218).

### B.     Medical Records

On January 17, 2011, J.P.L. was taken to Bryn Mawr Hospital by his mother after he had started coughing the previous day.  (R. 467).  Plaintiff had begun treating her son with a nebulizer at 11 p.m., and, at 1 a.m., the child had told her that "he felt that he should go to the hospital."  (*Id.*).  Plaintiff's face was ashen with pale lips, his oxygen saturation was low, and he had severe respiratory distress, decreased air movement, decreased breath sounds, mild bilateral wheezes, and expiatory wheezes.  (R. 468).  An assessment of status asthmaticus with hypoxemia was made, and J.P.L. received oxygen, steroid, and nebulizer treatment, which resulted in improvement.  (R. 468, 470-72, 494-500).  His condition improved, and he was discharged.  (*Id.*).

On January 11, 2012, J.P.L. went to the emergency room at Bryn Mawr Hospital for wheezing.  (R. 278).  He appeared to be in mild distress, and the respiratory examination showed moderate wheezing throughout all lung fields.  (R. 279).  Assessed with acute asthma exacerbation, his condition improved with oxygen, steroid, and nebulizer treatment.  (R. 279-80, 282-284).  On June 11, 2012, J.P.L. returned to the emergency room with moderate wheezing, coughing, and trouble breathing. (R. 241). Physical examination showed moderate respiratory distress, retractions, accessory muscle use, prolonged expirations, moderately decreased air movement bilaterally, mild bilateral wheezes, and expiratory wheezes.  (R. 242, 245).  His acute asthma exacerbation was treated with steroids and nebulization, and he was discharged in good condition.  (*Id.*).

On December 10, 2012, J.P.L. saw his primary care physician, Marc Altshuler, M.D. (R. 372). Plaintiff reported that he was doing well, although he was late to school at times due to his health conditions and he had a recent episode where he had an asthma attack and the nurse gave him a cough drop containing soy, which caused a rash. (R. 372-75). The physical examination findings were normal. (R. 374).

On the same day that he examined J.P.L, Dr. Altshuler electronically signed the following statement: "[J.P.L.] has severe chronic asthma and multiple allergies, leading to marked limitations. He should be on social security. I have been his primary care health provider since birth." (R. 178).

The child was examined by allergists Archana Mehta, M.D (an allergy and immunology fellow at Nemours AI DuPont Hospital), and Stephen McGeady, M.D. (the attending physician at Nemours AI DuPont Hospital), on December 20, 2012. (R. 378-86). Plaintiff reported daily asthma symptoms, nightly coughing, shortness of breath and chest tightness during gym class, daily use of Albuterol, multiple steroid courses and ER visits, and a history of three allergic reactions. (R. 379-80). The spirometry results were suggestive of mild obstructive disease. (R. 381). It was noted that J.P.L. was not taking the prescribed controller medications because his mother claimed that Flovent, which contains soy, had caused an allergic reaction and that Pulmicort had other adverse side effects such as an inability to sleep. (R. 380). Dr. Mehta (with Dr. McGeady's approval) recommended that the child take Flovent and, if there was a reaction, Pulmicort. (R. 382). Plaintiff was advised to call if either the nocturnal cough occurred more than once per month, Albuterol was used more often than twice a week, the child was hospitalized for asthma, or there was a need for oral steroids more than once prior to the next visit. (*Id.*).

On February 7, 2013, State agency medical reviewer, Varsha Lift, M.D., opined that J.P.L. had a less than a marked impairment in the domain of health and physical well-being and no impairment in any of the other domains of functioning. (R. 79-80).

J.P.L. returned to the Bryn Mawr Hospital emergency room on February 2, 2014 for moderate wheezing, coughing, and trouble breathing. (R. 418). The respiratory examination showed moderate decreased air movement bilaterally and moderate bilateral wheezes, and the clinical impression was for acute asthma exacerbation. (R. 419). J.P.L. received steroid and nebulizer treatment, and his condition significantly improved. (R. 419, 422). On March 10, 2014, J.P.L. was examined by Dr. Altshuler. (R. 392-96). The primary care physician observed that his symptoms were stable, the examination findings were normal, and the child was doing well in school and loved basketball. (R. 392, 394-96).

J.P.L. was seen by allergist Mark A. Posner, M.D. on March 19, 2014. (R. 796). He noted bilateral anterior faint forced wheezing. (*Id.*). According to Dr. Posner, the child had been taking Flovent for the past year with "marked benefit." (*Id.*). He substituted Advair for Flovent and directed that two puffs of Proair be administered fifteen to twenty minutes prior to sports/activity. (R. 797-98). J.P.L. returned to Dr. Posner on July 2, 2014. (R. 792). There had been a "[f]lare" of chest tightness and wheeze, but the child had responded well to a couple of days of Albuterol nebulizer treatment. (*Id.*). The allergist also noted that his condition remained improved overall. (*Id.*).

On January 21, 2015, Dr. Posner saw J.P.L., and he found that the child was doing well overall, the present medication regimen had resulted in good asthma control, the exercise tolerance had been good, and normal sleep patterns had been achieved. (R. 1018). Dr. Altshuler examined the child on April 6, 2015, and he observed that J.P.L. was doing very well overall

7

with his asthma and allergies well controlled. (R. 1230, 1232). On March 1, 2016, J.P.L. presented to the Bryn Mawr Hospital emergency room with a moderate fever, cough, congestion, and "increased work of breathing in spite of [being administered] Albuterol." (R. 1064). Plaintiff reported that her son's asthma had been well-controlled for the past year. (R. 1073). On physical examination, he was found to be in mild respiratory distress with labored respiration, minimal retractions, abnormal and decreased breath sounds, and wheezes in the right and left upper lung anteriorly. (R. 1069). He also had sinus tachycardia. (R. 1070). J.P.L. was diagnosed with influenza A, which exacerbated his asthma, and Plaintiff refused treatment with Tamiflu or intravenous steroids because of possible side effects. (R. 1078, 1082). He was provided with steroid and nebulizer treatment, and his condition improved. (R. 1066-70, 1089). Dr. Posner saw the child on April 19, 2016 and observed that his asthma had been less controlled since his discharge. (R. 1009). J.P.L. was seen by Dr. Altshuler on July 26, 2016, who noted that he was doing well. (R. 1223).

    **C.**    **Non-medical Evidence**

On December 21, 2012, Plaintiff completed a child function report for her son. (R. 180). She indicated that his physical abilities were limited due to his severe asthma, which made it difficult for him to breathe. (R. 185). On November 1, 2014, Plaintiff drafted a list enumerating the things she had to do to ensure his safety. (R. 224-25). The steps she took included the following: washing all bed linens, dusting and vacuuming the house every three days; using a special detergent for J.P.L.; encasing all mattresses and pillows with protectors; changing the Hepa Air filter every three months; purchasing only select organic and fresh foods; providing J.P.L. with his own plates and silverware, using a separate pantry, pots, and pans for his food, and separating his food in the refrigerator; making all of J.P.L.'s meals from scratch and bringing

food for him to eat when they go out to a restaurant; setting up a home nebulizer; carrying an asthma pump, a portable nebulizer, and an Epi-Pen at all times; waking up every two hours to check her son's breathing; using wipes to clean objects before J.P.L. touched them and to clean his hands; and purchasing a special organic toothpaste for her son. (R. 224-25). Plaintiff explained that J.P.L. still had ongoing asthma attacks, and she listed twenty-six times that she was late or absent from work between January 6, 2014 and November 14, 2014 because of her son's morning asthma attacks. (R. 225). She further stated that her father, retired physician Paul H. Noble, M.D., lived with Plaintiff and J.P.L. and was the only other person capable of taking care of her son. (R. 226).

At the November 21, 2014 hearing, J.P.L. testified that he liked to "run around" and play sports like basketball and baseball. (*Id.*). He planned on joining the basketball team. (*Id.*). J.P.L. acknowledged that he sometimes had asthma attacks while playing basketball, at which point he would go inside and take a puff from the inhaler. (R. 42). According to the child, he was allergic to certain foods, which he avoided eating. (R. 44). J.P.L. testified that his mother packed his lunch, and he ate with a friend at a separate table at school. (R. 45). His mother occasionally woke him at night for a breathing treatment. (R. 46). J.P.L. was late for school and absent some days because of asthma attacks. (*Id.*).

Plaintiff testified that her son had asthma and all eight of the most common food allergies. (R. 48). The EpiPen had been used only once when he was a baby. (R. 58-59). J.P.L. lost his breath both when running and when at rest. (R. 51). Plaintiff stated that J.P.L. was able to play basketball with his medications. (*Id.*). She tried to keep her home clean and washed her hands and prepared his food to prevent cross-contamination. (R. 57-58). Plaintiff watched her son for any signs of an asthma attack or an allergic reaction. (R. 60). Her father also assisted in

caring for J.P.L. (R. 56). Plaintiff testified that she had missed or been late for work twenty-six times since January 2014 because her son had suffered a morning asthma attack that required a nebulizer treatment. (R. 53-54). J.P.L. also woke up almost every single night, requiring her to administer either a nebulizer treatment or use the inhaler. (R. 54-55).

      At the July 21, 2021 hearing, J.P.L. testified that, in the fifth or sixth grade, he first became aware of the reasons why he could not touch or eat certain things. (R. 882-83). The child also said that it was "a very big deal" for him to be able to have lunch with his friends because for the prior ten years he had sat at a table away from everybody else. (R. 883). He was able to explain his allergies to his friends, and a sign was placed on his table explaining his allergies and the consequences if he had an attack. (R. 883-84). J.P.L. joined the school basketball team in the seventh grade. (R. 885). Before he joined the team, he had only played basketball in the driveway at home. (*Id.*). Since March 2020, he attends school virtually because of the COVID-19 pandemic. (R. 885-86). He generally feels well with respect to his asthma and allergies. (R. 886). He continues to have periodic issues with asthma. (R. 885). The last time he went to the emergency room was about two years before the 2021 hearing when he had an asthma attack while playing basketball. (*Id.*).

      According to Plaintiff, J.P.L. was finally able to eat lunch with his friends when he entered the sixth grade. (R. 887). She was happy that all her hard work educating and giving him repetitive instructions had paid off, and she continues to teach J.P.L. how to avoid cross-contamination of his food. (R. 887-88). Plaintiff stated that she continues to do the things listed in her November 1, 2014 statement. (R. 888-89). She also testified that, before the sixth grade, her son did not carry an inhaler with him in school and that he does not carry an EpiPen. (R. 889). The nurse's office has an inhaler and EpiPen, and Plaintiff also continues to carry the

items with her.  (*Id.*).  The child's asthma and allergies have remained the same for the past year and a half since virtual learning had begun.  (R. 889-90).  He also continues to use the home nebulizer.  (R. 890).

**III.     LEGAL STANDARD**

Under the Social Security Act, the SSA must apply a three-step sequential evaluation process to determine if a child under the age of eighteen is disabled.  20 C.F.R. § 416.924(a).  A child under eighteen is eligible for SSI benefits only if: (1) he is not performing substantial gainful activity; (2) he has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.924.

If the child's impairment does not medically meet a listing, the examiner must determine whether the impairment functionally equals a listing.  An impairment or combination of impairments functionally equals a listed impairment if it causes a "marked" limitation in two of six domains of functioning or an "extreme" limitation in one of those six domains.  20 C.F.R. § 416.926(a). [1]  The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

---

[1] A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). The Third Circuit has instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

IV.    **ALJ'S DECISION**

In his decision, the ALJ made the following findings:

1. The claimant was born on November 20, 2004. Therefore, he was a school-age child on December 13, 2012, the date application was filed, and remained a school-age child throughout the alleged closed period of disability through August 31, 2016 (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since December 13, 2012, the amended alleged onset date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. Since December 13, 2012, the claimant has the following severe impairments:

asthma; and food allergies (20 CFR 416.924(c)).

4. Since December 13, 2012, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926).

5. Since December 13, 2012, the claimant has not had an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. I find that the claimant has not been disabled, as defined in the Social Security Act, since December 13, 2012 (20 CFR 416.924(a)).

(R. 847-57). Accordingly, the ALJ found Plaintiff was not disabled. (R. 857).

## V. DISCUSSION

Plaintiff raises two claims in her Request for Relief: (1) the ALJ failed to appropriately find that J.P.L.'s requirement of 24-hour-a-day supervision functionally equaled the listings; and (2) the ALJ erroneously disregarded the opinion of J.P.L.'s treating physician, Dr. Altshuler. (Pl.'s Br., ECF No. 6, at 9-24). I conclude that the ALJ failed to consider Dr. Altshuler's opinion and remand on this basis. Because the ALJ's consideration of the medical opinion could affect his determination of whether the Plaintiff required 24-hour-a-day supervision, I do not reach the first claim.

### A. Dr. Altshuler's Opinion

In a December 10, 2012 statement, J.P.L.'s treating physician, Dr. Altshuler opined that "[J.P.L.] had severe chronic asthma and multiple allergies, leading to marked limitations." (R.

178).  According to the child's treating physician, "[h]e should be on social security." (*Id.*). Plaintiff argues that the ALJ erred as a matter of law by failing to consider or even mention this medical opinion. (Pl.'s Br., ECF No. 6, at 21-23).  The Acting Commissioner responds that the ALJ's discussion of Dr. Altshuler's treatment notes did not substantiate a finding of disability or any specific medical limitations given J.P.L.'s strong performance in school, the normal physical examination findings, the infrequent office visits, and the quick response to isolated exacerbations of his conditions. (Def.'s Br, ECF No. 7, at 14) (citing R, 854-55).  Furthermore, she notes that the ALJ explained that there was nothing in the record suggesting a need for medical oversight. (*Id.* at 14) (citing R. 854-55).  The Acting Commissioner states that, "[t]o the extent that Plaintiff is arguing that Dr. Altshuler offered an opinion, as it is defined by the Act, which was not considered by the ALJ, any such error was harmless." (*Id.*) (citing 20 C.F.R. § 416.927(a)(1)).  She asserts that the opinion would not change the ALJ's decision because the treating physician's "isolated, unsubstantiated, and vague statement that was incidentally made a few days before the relevant period contradicts his treatment notes and does not undermine the ALJ's thorough evaluation of the overall evidence of record." (*Id.* at 15) (citing *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009)).  Plaintiff argues in her reply brief that courts should apply the harmless error analysis cautiously in the administrative review context, and she asserts that the ALJ must address all medical source opinions and give some explanation for why he discounted evidence he rejected. (Pl.'s Reply Br, ECF No. 8, at 8-10).

Under the applicable Social Security regulations,[2] "medical opinions are statements from

---

[2] The regulations providing for the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920c (prescribing rules for new decisions which apply to claims filed on, and after, March 27, 2017). These amended regulations are not applicable to this case.

acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a). The ALJ is directed to consider a number of factors in deciding what weight to accord a medical opinion. These factors include: (1) the examining relationship; (2) the nature and extent, and length of a treating relationship; (3) the supporting explanations provided for the opinion; (4) the consistency of the opinion with the records as a whole; (5) the medical source's specialization; and (6) any other relevant factors. 20 C.F.R. § 416.927(c)(1)-(6). Treating medical source opinions are generally entitled to controlling weight, or at least substantial weight. *Fargnoli v. Massanari*, 247 F. 3d 34, 43 (3d Cir. 2001). However, the ALJ may assign a treating physician's opinion more or less weight depending upon the extent to which the physician's assessment is supported by the record. *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999). When faced with conflicting medical opinions, an ALJ may choose who to credit but "must consider all the evidence and give some reason for discounting the evidence he rejects." *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010); *Plummer*, 186 F.3d at 429. Although the ALJ need not credit every medical opinion, he must consider every medical opinion. 20 C.F.R. § 416.927(b)-(c). His explanation "must be sufficient enough to permit the court to conduct a meaningful review." *Burnett*, 220 F.3d at 119-20.

The Acting Commissioner does not dispute that Dr. Altshuler offered a medical opinion.[3]

---

[3] To the extent that Dr. Altshuler opined on an issue reserved to the Commissioner by stating that J.P.L. "should be on social security" (R. 178), Social Security Ruling 96-5p explains that "our rules provide that adjudicators must always carefully consider medical source opinions about issues that are reserved to the Commissioner" and that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," SSR 96-5p, 1996 WL 374183, at *2-3 (Jul. 2, 1996). In any event, the treating physician also stated that "[J.P.L.] had severe chronic asthma and multiple allergies, leading to marked limitations" (*id.*), *see, e.g.*, 20 C.F.R. §

She also does not contest the fact that the ALJ failed to mention Dr. Altshuler's medical opinion. The ALJ's failure to discuss or even mention this medical source statement "makes it impossible for us to review [his decision] for we cannot tell if significant probative evidence was not credited or simply ignored." *Fargnoli*, 247 F.3d at 42 (citations omitted); *see also Batista v. Astrue*, No. 09-3757, 2011 WL 1044923, at *6 (E.D. Pa. Mar. 22, 2011) (advising that when a court "cannot determine if relevant unmentioned evidence was dismissed as not credible or simply ignored during review, a remand is appropriate"). There may be good reasons for the ALJ to discount this medical evidence, but neither the Acting Commissioner nor this Court can provide them for him after the fact. *See Nichols v. Colvin*, No. 14-01755, 2015 WL 5255245, at *4 (W.D. Pa. Sept. 9, 2015) ("Although there may be grounds . . . to support the ALJ's conclusions, it is not [the Court's] role to seek out such grounds and justify the ALJ's decision post-hoc. Although this approach may appear to elevate form over substance, the requirement that an ALJ adequately explain his decision is not a technicality."). Under the applicable regulation, the ALJ must evaluate every medical opinion received. *Cantelupe v. Colvin*, No. 1:15-CV-410, 2015 WL 9598896, at *7 (M.D. Pa. Dec 17, 2015) (citing 20 C.F.R. § 416.927(b)-(c)), *report and recommendation adopted by* 2015 WL 55084 (M.D. Pa. Jan. 5, 2016). The ALJ's factual summary of Dr. Altshuler's treatment notes does not fulfill this regulatory requirement to consider every medical opinion. Given the prohibition against post-hoc rationalizations and the "cardinal" importance of treating source opinions under the pre-2017 framework, which cannot be rejected "for no reason," *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000), I conclude that the ALJ's failure to mention the treating physician's opinion

---

416.927(a) (defining "medical opinion" as including statements symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and physical or mental restrictions).

cannot be considered harmless error.[4] *See Harrison v. Berryhill*, No. 3:17-CV-618, 2018 WL 2051691, at *6 (M.D. Pa. Apr. 17, 2018) ("[W]e agree that the ALJ's failure to even acknowledge this treating source medical opinion cannot be treated as a harmless error.") (citing *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015); *Berrios v. Berryhill*, No. 8:16-CV-2272, 2018 WL 1054308, at *3 (C.D. Cal. Feb. 23, 2018)), *report and recommendation adopted by* 2018 WL 2049924 (M.D. Pa. May 2, 2018). Accordingly, explicit consideration of Dr. Altshuler's opinion evidence is necessary to facilitate judicial review. *See Gross v. Comm'r Soc. Sec.*, 653 F. App'x 116, 120-21 (3d Cir. 2016); *Edwards v. Colvin*, No. 14-4235, 2015 WL 4545391, at *3–5 (E.D. Pa. July 28, 2015) (remand necessary where the ALJ analysis fails to sufficiently justify the rejection of physician opinion and thus, court without necessary information to determine whether ALJ decision supported by substantial evidence).

### B.    24-Hour-A-Day Adult Supervision

20 C.F.R. § 416.926a(m) states the following:

> Examples of impairments that functionally equal the listings. The following are some examples of impairments and limitations that functionally equal the listings. Findings of equivalence based on the disabling functional limitations of a child's impairment(s) are not limited to the examples in this paragraph, because these examples do not describe all possible effects of impairments that might be found to functionally equal the listings. As with any disabling impairment, the duration requirement must also be met (see §§ 416.909 and 416.924(a)).
>
> (1) Any physical impairment(s) or combination of physical and mental impairments causing complete inability to function independently outside the area of one's home within age-appropriate

---

[4] The Third Circuit has also recognized that proper consideration of medical opinions that pre-date the disability onset date requires at least some explanation for rejecting an otherwise-relevant medical opinion in its entirety, and other courts in this Circuit have recommended remand where the ALJ ignored opinion evidence rendered before the disability onset date. *See, e.g.*, *Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 804 (3d Cir. 2007); *McKean v. Colvin,* No. 13-2585, 2015 WL 1201388, at *5 (M.D. Pa. Mar. 16, 2015).

17

>    norms.
>
>    (2) Requirement for 24–hour–a–day supervision for medical (including psychological) reasons.
>
>    (3) Major congenital organ dysfunction which could be expected to result in death within the first year of life without surgical correction, and the impairment is expected to be disabling (because of residual impairment following surgery, or the recovery time required, or both) until attainment of 1 year of age.

The ALJ considered whether J.P.L. required 24-hour supervision as part of the ALJ's discussion of the "health and physical well-being" domain of functioning under 20 C.F.R. § 416.926a(a). (R. 851-56). According to the ALJ, the Plaintiff's argument that her son required 24-hour supervision to manage his asthma and avoid exposure to allergens was not supported by the record. (R. 852-54).

Plaintiff contends that the ALJ's finding is not supported by substantial evidence and that, in fact, the steps taken by school staff and Plaintiff to protect J.P.L. show that the child required extensive and close 24-hour adult supervision over the course of the amended disability period. (Pl.'s Br., ECF No. 6, at 9-20). The Acting Commissioner responds that the ALJ reasonably concluded that J.P.L.'s condition did not require 24-hour-a-day adult supervision. (Def.'s Br., ECF No. 7, at 7-13). In her reply brief, Plaintiff argues that there is overwhelming and incontrovertible evidence throughout the record of J.P.L.'s need for constant "round-the-clock" adult supervision. (Pl.'s Reply Br., ECF No. 8, at 4-8).

The Court need not decide whether this issue constitutes a basis for remand at this time. The ALJ determined that J.P.L. had a less than marked limitation in the domain of health and physical well-being and no limitations in the other five domains of functioning. (R. 848-57). If the ALJ credits Dr. Altshuler's opinion and finds that he had marked limitations in at least two domains of functioning, Plaintiff's "24-hour-a-day adult supervision" claim may fade away. *See*

*Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because the ALJ may reverse his or her findings after remand). In addition, the ALJ's opinion assessment may affect his related determination of whether the child required 24-hour supervision. For instance, the ALJ gave great weight to the opinion of Dr. Lift, the State agency medical reviewer, that J.P.L. had a less than marked limitation in the domain of health and physical well-being and no impairments in any of the other domains. (R. 856) (citing R. 79-80). According to the Acting Commissioner, the ALJ properly rejected the need for 24-hour-a-day adult supervision because the medical records, including Dr. Lift's opinion, did not support such a restriction. (Def.'s Br., ECF No. 7, at 12). However, the ALJ's assessment of Dr. Lift's opinion and his ultimate finding concerning the need for 24-hour supervision may change based on his consideration of Dr. Altshuler's opinion, who, unlike the state agency physician, opined that J.P.L. did have marked limitations. *See, e.g.*, *id*. The failure to address the treating physician's opinion, which was at odds with the medical opinion credited by the ALJ, also makes it impossible to evaluate whether the ALJ's conclusion that J.P.L. did not require 24-hour-a-day adult supervision is supported by substantial evidence. *See Edwards*, 2015 WL 4545391, at *3-5.

    **C.**    **Remedy**

Plaintiff contends that she is entitled to a finding of disability and an award of benefits. (Pl.'s Br, ECF No. 6, at 23-24; Pl.'s Reply Br, ECF No. 8, at 10). I disagree and find that remand – rather than an award of benefits - is the appropriate remedy. *See Gilliland v. Heckler*, 786 F.2d 178, 184-85 (3d Cir. 1986). An award of benefits only is appropriate "when no evidentiary questions remain and the outcome of the case is dictated as a legal matter." *Freeman v. Berryhill*, No. 16-2610, 2017 WL 1351425, at *7 (E.D. Pa. Mar. 23, 2017), *report and*

19

*recommendation adopted by* 2017 WL 1375185 (E.D. Pa. April 10, 2017).  That is not case in the instant matter.  On remand, the ALJ will consider Dr. Altshuler's medical opinion as outlined in this memorandum, which may affect the ultimate outcome of the case.  Consequently, an award of benefits would be premature in this instance.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff's Request for Review is **GRANTED** to the extent that it requests remand.  This matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge